*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONICA LYNN O'BRIEN,

      Plaintiff-Appellant,

v

MATTHEW JOSEPH KING,

      Defendant-Appellee.

UNPUBLISHED
October 23, 2025
1:51 PM

Nos. 373429; 373570
Oakland Circuit Court
LC No. 2019-876147-DC

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

In Docket No. 373429, plaintiff-appellant, Monica Lynn O'Brien, appeals as of right the trial court's November 21, 2024 order: (1) granting defendant-appellee's, Matthew Joseph King's, motion to change the domicile of the parties' minor child from Romeo, Michigan, to Park Ridge, Illinois; and (2) altering the parties' parenting-time schedule. In Docket No. 373570, plaintiff appeals as of right the trial court's November 15, 2024 order denying her motion for attorney fees. In Docket No. 373570, plaintiff also challenges the trial court's: (1) March 29, 2024 order, partially denying plaintiff's motion to compel discovery; and (2) April 18, 2024 order, granting defendant's motion to quash plaintiff's subpoena to Modern Court Reporting & Video, LLC.[1] These appeals were consolidated "to advance the efficient administration of the appellate process." *O'Brien v King*, unpublished order of the Court of Appeals, entered December 11, 2024 (Docket Nos. 373429 and 373570).

---

[1] "An appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1). To the extent that we lack jurisdiction to consider plaintiff's arguments in Docket No. 373570 concerning the March 29, 2024 and April 18, 2024 orders, we grant leave. See *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011) ("for the sake of judicial economy, we exercise our discretion to treat [appellant's] claim of appeal as a granted application for leave to appeal"); see also *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

-1-

## I. FACTS

In 2016, the parties met and began a relationship while living in Los Angeles, California. In April 2017, their child was born. Shortly before the child was born, plaintiff moved in with defendant; the parties cohabitated, but they never married. When the child was about 18 months old, the parties' relationship deteriorated for reasons they dispute. In November 2018, plaintiff took the child to Michigan, where plaintiff's family was located. Defendant, who did not give consent to the child traveling to Michigan, objected. The parties obtained their own legal counsel in California, but plaintiff and the child remained in Michigan, where plaintiff rekindled a relationship with a man she would later marry. Beginning in December 2018, defendant traveled to Michigan on a monthly basis to transport the child to Lockport, Illinois, where defendant's family was located, to exercise his parenting time.

In September 2019, plaintiff filed an action in Michigan, seeking primary physical custody and joint legal custody of the child. Defendant sought joint legal and physical custody, and requested a specific parenting-time schedule. The parties reached a custody agreement, which was outlined in a November 2019 consent judgment. The parties were granted joint legal and physical custody of the child, and defendant was granted: (1) parenting time "at least six times per year (approximately every other month) for ten (10) uninterrupted days per parenting schedule," and (2) "additional parenting time (for one week intervals) if he [was] able to travel to Michigan more than 6 times per year, with at least two (2) weeks' written notice. . . ." Parenting time was not to be "unreasonably withheld," and the parties were required to apprise each other of: (1) changes in address; (2) information concerning the child's school and healthcare providers; and (3) "any medical and mental health treatment or evaluation" of the child "within 48 hours prior thereto. . . ." "In emergency situations, either parent [could] authorize necessary health care treatment and procedures for [the child] and such parent [was required to] notify the other thereof as soon as reasonably possible." The parties also agreed "that before entering into litigation, they [would] seek the assistance of a qualified family counselor or mediator if they [could not] agree on major . . . decisions" concerning the child.

In April 2020, after defendant discovered that plaintiff was not keeping him informed about issues concerning the child, defendant moved to Lockport to be closer to the child. In December 2020, the parenting-time schedule was modified through a consent order.[2] After defendant got married to a woman he met in Illinois, he moved to Park Ridge, Illinois. Defendant lived there with his wife and her three children. Meanwhile, plaintiff and her husband had a child together and remained in Michigan.

### A. DEFENDANT'S 2022 CHANGE-IN-DOMICILE MOTION

---

[2] In July 2020, defendant moved for temporary sole legal and physical custody of the child, and in August 2020, defendant moved to change the child's domicile to Lockport and for sole legal custody. The December 2020 consent judgment was the result of the parties' agreement concerning those motions.

In March 2022, after the child underwent an emergency root canal while in defendant's care, defendant moved the trial court to change the child's domicile to Park Ridge, alleging that the child's medical needs were not being met in plaintiff's care. Defendant requested that he be permitted to enroll the minor child in kindergarten in Illinois. In the alternative, defendant requested that the parenting-time schedule be modified to accommodate the child's school schedule in Michigan. The parties' attempts to reach a resolution through mediation were unsuccessful, and the trial court referred the matters to the Friend of the Court after concluding that defendant established proper cause and a change in circumstances. The parties would later request attorney fees, and sanctions, which the trial court ordered would also be decided by a Friend of the Court referee.

In August 2022, the evidentiary hearing concerning the child's domicile commenced before the referee. It continued over 30 hearing dates, finally ending in September 2023. The hearings were conducted over Zoom, although plaintiff requested that the hearings be in-person while they were in process. The parties testified about their difficulties with communication and coparenting. Extensive evidence was presented concerning plaintiff's: (1) failure to ensure that the child's medical needs were met, and (2) decision to take the child to a Florida vacation during Hurricane Ian. While the proceedings were pending, the parties filed various motions with the trial court. Plaintiff also initiated show-cause proceedings against defendant, alleging that he violated court orders by failing to keep her informed about medical treatment that the child received while in defendant's care. Plaintiff's attempts to have defendant found in contempt of court were unsuccessful.

In October 2023, the referee recommended that the trial court grant defendant's motion to change the child's domicile. The referee also recommended a modified parenting-time schedule, which would grant plaintiff parenting time during school breaks and holidays. Plaintiff objected and requested a de novo review and an evidentiary hearing before the trial court. The trial court granted plaintiff's motion, and an in-person de novo hearing was held in February 2024. Plaintiff was permitted to present evidence about events that occurred after the close of proofs at the referee hearing. Plaintiff called four witnesses, including herself and defendant.

On October 14, 2024, the trial court issued an opinion and order, granting defendant's motion to change the child's domicile.[3] The trial court noted that it reviewed the referee hearing transcripts and exhibits, considered the evidence presented at the February 2024 hearing, and conducted an *in camera* interview with the child on February 20, 2024. After addressing plaintiff's objections to the referee's findings and recommendations, the trial court found it was in the child's best interests to grant defendant's motion. The trial court granted plaintiff parenting time and regular contact with the child, as recommended by the referee, and the parties were ordered to participate in services to address their issues with coparenting. Plaintiff's appeal in Docket No. 373429 followed.

When the trial court's order was entered, the child was attending second grade in Michigan. Plaintiff unsuccessfully sought to stay the enforcement of the trial court's order, pending resolution

---

[3] This order was ultimately entered on November 21, 2024.

on appeal, in the trial court; this Court, *O'Brien v King*, unpublished order of the Court of Appeals, entered December 19, 2024 (Docket Nos. 373429; 373570); and our Supreme Court, *O'Brien v King*, 14 NW3d 435 (Mich, 2025).

## B. REQUESTS FOR ATTORNEY FEES

In November 2023, the referee held hearings on the parties' requests for attorney fees under MCR 3.206(D)(2). Evidence was presented that defendant, a former model, sometimes worked as a substitute teacher, and plaintiff, a stay-at-home mother, was working toward developing a life-coaching business. Neither party was gainfully employed, and they were largely supported by their spouses. Plaintiff presented evidence that defendant's wife earned a significant income, deposited large sums into defendant's bank accounts, and paid large balances on defendant's credit cards on a routine basis. Defendant denied that he had unfettered access to his wife's income. Plaintiff testified that she was in significant debt because of her attorney fees, which she could not afford. In December 2023, the referee recommended denying the parties' requests for attorney fees under MCR 3.206(D)(2)(a) and (b). Plaintiff objected.

The trial court granted plaintiff's request for a de novo review and an evidentiary hearing on attorney fees. In doing so, the trial court held that it would review the transcripts from the November 2023 hearings before the referee, and it permitted the parties to "supplement the record with information that was not available at the time of the Referee Hearing." Plaintiff sought discovery from defendant relating to his ability to pay attorney fees, to which he objected. Plaintiff moved the trial court to compel defendant to provide certain discovery relating to his finances—the trial court partially denied plaintiff's motion on the basis that she sought evidence that was available at the time of the November 2023 referee hearings, yet the trial court ordered the parties to exchange certain updated financial information. The trial court also quashed a subpoena that plaintiff issued to Modern Court Reporting.

The in-person de novo hearings on attorney fees were not held until August 2024 and October 2024 because there were several adjournments. The parties both testified, and plaintiff was permitted to present evidence about the parties' finances after the November 2023 hearings. In November 2024, the trial court denied any award of attorney fees under: (1) MCR 3.206(D)(2)(a), because the record established that neither party had an ability to pay; and (2) MCR 3.206(D)(2)(b), because both parties had engaged in misconduct, and "neither party has provided any evidence that the other party was the sole cause of the length and number of proceedings in this case." Plaintiff's appeal in Docket No. 373570 followed.

## II. DOMICILE PROCEEDINGS

In Docket No. 373429, plaintiff raises a series of arguments concerning the trial court's decision to change the child's domicile to Park Ridge. We consider them in turn and conclude that plaintiff is not entitled to relief.

## A. STANDARD OF REVIEW

"We apply three standards of review in custody cases." *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000).

The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, we review under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"These three deferential standards of review are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citation omitted). "A trial court's ultimate decision on a motion for change of domicile is reviewed for an abuse of discretion." *Safdar v Aziz*, 342 Mich App 165, 175; 992 NW2d 913 (2022). "The trial court's findings regarding the best-interest factors of MCL 722.23 are . . . reviewed under the great-weight-of-the-evidence standard." *Id*. at 176-177.

"We review de novo the interpretation and application of statutes, court rules, and the rules of evidence." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). Regarding evidentiary issues, "we review for an abuse of discretion a trial court's decision to admit or exclude evidence, but preliminary legal questions regarding the admissibility of evidence are reviewed de novo." *Id*. In this context, "[a]n abuse of discretion occurs when the result falls outside the range of principled outcomes." *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015); see *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006) (noting the "default abuse of discretion standard of review is an assumed or assigned standard of review unless the law instructs otherwise").

B. THE TRIAL COURT'S ALLEGED CONSIDERATION OF OUTDATED EVIDENCE

On appeal, plaintiff argues that the trial court erred when it allowed, and relied on, evidence that predated the entry of the last order concerning custody. We disagree.

"The [Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*.,] governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021). "In any custody dispute, [the] overriding concern and the overwhelmingly predominant factor is the welfare of the child." *Wiechmann v Wiechmann*, 212 Mich App 436, 440; 538 NW2d 57 (1995) (quotation marks and citation omitted). "The purposes of the [CCA] are to promote the best interests of the child and to provide a stable environment for children that is free of

-5-

unwarranted custody changes." *Merecki*, 336 Mich App at 645 (quotation marks and citations omitted). The CCA "draws a distinction between physical custody and legal custody . . . ." *Id*. at 647.

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). The threshold showing of proper cause or a change of circumstances must be established by a preponderance of the evidence. *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). If the moving party advances a change-of-circumstances theory, he or she "must prove that, *since the entry of the last custody order*, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513 (first emphasis added). To establish proper cause, the moving party must demonstrate the existence of an appropriate ground regarding at least one of the statutory best-interest factors that is of such magnitude that it has a significant impact on the child's well-being. *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011). When deciding whether proper cause exists, the trial court is not barred from considering evidence predating the entry of the last custody order. See *Vodvarka*, 259 Mich App at 514-515.

In this case, plaintiff does not argue that defendant failed to meet these threshold requirements. Rather, plaintiff challenges the trial court's consideration of what plaintiff considers to be outdated evidence relating to its best-interests determination. To support her position that error occurred, plaintiff relies on *Kuebler*, 346 Mich App at 663-667. But the *Kuebler* Court did not hold that there is a temporal limitation for the best-interests determination. Rather, the Court held that evidence concerning the defendant's alleged domestic violence against the plaintiff was not relevant because: (1) the conduct occurred before the entry of the 2017 consent judgment of divorce, and (2) the defendant's purported domestic violence was not at issue at the time the trial court decided the plaintiff's motion to change custody. *Id*. at 663-666. As stated by this Court, "[t]here was absolutely no evidence of recent domestic violence in [the] defendant's home or even of any allegations of recent domestic violence." *Id*. at 665 (emphasis omitted).

In this case, unlike in *Kuebler*, the parties' relationship history was relevant because it helped explain their deep-seated distrust of one another. Also, beginning in August 2020, when the child was first diagnosed with cavities, plaintiff had a history of failing to get the child proper medical attention. Evidence of plaintiff's prior behavior was relevant, and necessary, to determine whether she continued to make poor decisions concerning the child's medical issues, or was working to improve her parenting skills and coparenting relationship with defendant. Without evidence of plaintiff's history of failing to get the child timely medical attention as early as 2020, plaintiff's failure to take the child to be medically assessed after he fell off the swing in August 2023 would be less impactful. This evidence was relevant to the child's best interests. There is no authority to support the assertion that a trial court must draw an arbitrary temporal line and refuse to consider any evidence that occurred before the entry of the last custody order when considering a child's best interests. Such a restriction would be contrary to the purpose of the CCA, which is to promote the best interests of the child. See *Merecki*, 336 Mich App at 645.

-6-

We acknowledge that "[t]he purpose of a child-custody proceeding to modify an existing custody order is to determine the best interests of the children *on the basis of up-to-date information* and any other changes in circumstances arising since the trial court's original custody order." *Kuebler*, 346 Mich App at 664 (emphasis added; quotation marks and citation omitted). But nothing prevented the trial court from weighing the evidence of the parties' recent behaviors more heavily, and here, the trial court did so. Additionally, unlike in *Kuebler*, this case was not a custody dispute within the larger context of a divorce proceeding. See *id.* at 663-664 (noting "proceedings for the modification of child custody provisions generally require new evidence that was not available in the divorce action"). Rather, the parties, who were never married, initially stipulated to joint custody. While a trial court's duty to ensure a child's best interests is not lessened or heightened depending on how the matter comes before the court, the case at bar is simply in a different procedural posture than the case in *Kuebler*. The trial court did not err as a matter of law, and it did not abuse its discretion, by considering evidence dating back to the child's birth for purposes of deciding best interests.

## C. CHANGE OF DOMICILE

Plaintiff further argues that the trial court abused its discretion by granting defendant's motion to change the child's domicile to Park Ridge. We disagree.

"A motion for a change of domicile essentially requires a four-step approach." *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).[4] As explained by this Court:

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Id.* (citation omitted).]

Of these four steps, plaintiff only challenges the trial court's assessment of certain best-interest factors on appeal.

---

[4] Because custody was governed by court order here, and because Park Ridge is located more than 100 miles from Romeo, defendant was not permitted to change the child's legal residence under MCL 722.31(1). Nevertheless, the trial court could permit a change of legal residence under MCL 722.31(4). *Yachcik v Yachcik*, 319 Mich App 24, 33; 900 NW2d 113 (2017).

Before custody can be modified, the trial court "must make specific findings of fact regarding each of the 12 statutory best-interest factors." *Johnson v Johnson*, 329 Mich App 110, 129; 940 NW2d 807 (2019). "A trial court's findings regarding each best interest factor are reviewed under the great weight of the evidence standard." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts "are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id*. (quotation marks and citation omitted). A single circumstance can be relevant to, and considered in, determining more than one factor. *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998). "When a trial court does not make . . . findings on the best-interest factors, the proper remedy is reversal and a remand for a new child-custody hearing." *Rivette v Rose-Molina*, 278 Mich App 327, 330; 750 NW2d 603 (2008).

In this case, plaintiff challenges the trial court's findings as to factors (b), (c), (d), (f), (g), and (j). Plaintiff also argues that the trial court overlooked factors (e) and (i). We consider plaintiff's arguments in turn, but we first underscore that in this case, the trial court had the benefit of reviewing the transcripts of and exhibits submitted at the referee's 30 hearings as well as conducting its own in-person de novo hearing. The trial court did not simply adopt the referee's findings concerning the best-interest factors; in fact, the trial court disagreed with the referee's findings concerning factors (b), (f), and (j). "We defer to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

## 1. FACTOR (b)

MCL 722.23(b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." In this case, the referee determined that factor (b) favored defendant, but the trial court determined that factor (b) did not favor either party. On appeal, plaintiff argues that factor (b) should favor her. We disagree.

The trial court determined "that both parties have the capacity to provide [the child] with love[,] affection[,] and guidance as well as the capacity to continue with both involved in the education of the minor child." The record in this case supports that both parties were involved in the child's education. They both attended parent-teacher conferences and kept in contact with the child's teachers during the school year. It is undisputed that the child's performance in school suffered because of his excessive absences; however, both parties were responsible for those absences. When the child was in kindergarten, defendant exercised much of his parenting time in Illinois,[5] and plaintiff removed the child from school for five days to take a trip to Florida during

---

[5] That year, defendant dedicated a significant amount of his parenting time in Illinois to homeschooling the child with materials provided by his teacher. According to the child's teacher, defendant wanted to help the child and defendant focused on the child's best interests. Although

Hurricane Ian. When the child was in first grade, he missed 14 days of school, a week of which was attributable to defendant's parenting time, and a week of which was attributable to illness. When the child was in first grade, defendant exercised some of his parenting time in Michigan, at great expense, to ensure that the child did not miss school.

This is not a case where one of the parties was more involved in the minor child's education or was better suited to provide the minor child with guidance. Cf. *MacIntyre v MacIntyre*, 267 Mich App 449, 454; 705 NW2d 144 (2005) (holding that the trial court properly found that factor (b) favored the plaintiff because the plaintiff "was better able to provide guidance"). Instead, both parties failed to put the child's best interests and educational needs first at times. As the trial court stated, "both parties are so focused on themselves that [the child] suffered." Accordingly, the trial court's finding that factor (b) did not favor either party was not against the great weight of the evidence.

## 2. FACTOR (c)

MCL 722.23(c) considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." "Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). In this case, the referee, and the trial court both determined that factor (c) favored defendant. On appeal, plaintiff argues that factor (c) should favor her, or at the very least, the parties should be equally favored. We disagree.

Here, plaintiff failed to ensure that the child received appropriate dental attention for 14 months. Despite being informed that the child had two cavities in August 2020, the cavities were not filled until October 2021, by which time, the child had developed at least one additional cavity.[6] In January 2022, at the beginning of defendant's parenting time, the child complained about pain in his mouth. Defendant immediately discovered that the child's gums were inflamed and secured dental treatment, including an emergency root canal because of an abscessed tooth. According to the dentist who performed the root canal procedure, if the abscessed tooth was left untreated for another seven days, the child likely would have lost the infected tooth. The dentist wanted to save the tooth because it "was still in really good shape," and she did not want to insert a "spacer."

Plaintiff is correct that multiple medical professionals testified that many children get cavities and denied that plaintiff was negligent for the child accumulating cavities; however, these witnesses were not provided with all the information, and it was for the trier of fact, not the

---

defendant "offended" the teacher on at least one occasion, the teacher testified that defendant's demeanor was often "pleasant" and cooperative.

[6] Plaintiff attributed much of this delay to insurance issues and her inability to pay a copay; however, while the child required dental care, plaintiff traveled to Los Angeles, developed her life coaching business, purchased spa treatments, and had her dog groomed. Plaintiff agreed that she failed to communicate effectively with defendant about the child's dental issues.

witnesses, to weigh the evidence and make conclusions. See *Sabatine*, 513 Mich at 284. Additionally, plaintiff ignores that: (1) three dentists testified that cavities should filled as soon as possible; and (2) her preferred Michigan dentist responded affirmatively when asked the following question: "But you agree with me that it's negligent if a parent knew about the cavities and did not treat them, correct?"

Plaintiff also argues that the trial court disregarded certain evidence. But the trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." See *MacIntyre*, 267 Mich App at 452. Rather, "it is the best interests of each individual child that will control the custody decision." *Wiechmann*, 212 Mich App at 440. In this case, the trial court placed great weight on plaintiff's failure to ensure that the child received proper dental treatment for 14 months, and it was for the trier of fact to weigh the evidence. See *Sabatine*, 513 Mich at 284. Undoubtedly, plaintiff's decision to withhold information from defendant about the child's dental care inured to the child's detriment. Contrary to plaintiff's arguments on appeal, she did not fully accept responsibility for this. Plaintiff described the child's dental issues as "unfortunate." At various times, plaintiff blamed her failure to treat the child's cavities on: (1) the COVID-19 pandemic; (2) difficulties with finding a dentist; (3) her failure to understand the urgency of the situation; (4) issues with the dental insurance; and (5) being overwhelmed after the birth of her daughter. And when asked if her decisions regarding dental treatment impacted the child, plaintiff responded: "Our decisions? [D]ad and I's? Possibly, yes."

Although defendant knew that the child had cavities in February 2021, he did not know that they were left untreated until discovery commenced in this case. Defendant testified that if he had known, he would have ensured the child got proper medical attention. As defendant noted, after discovering the dental neglect and other health issues that plaintiff failed to disclose to him, defendant ensured that the child went to the dentist, pediatrician, and dermatologist on a regular basis, and he followed the medical professionals' recommendations.

In sum, the trial court properly considered relevant evidence relating to the child's best interests when analyzing factor (c), and the trial court's finding that factor (c) favored defendant was not against the great weight of the evidence.

### 3. FACTOR (d)

MCL 722.23(d) considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). In this case, the referee, and the trial court both determined that factor (d) favored the parties equally. On appeal, plaintiff argues that factor (d) should favor her. We disagree.

Both parties provided a home for the child, and the child enjoyed stable environments in their care. It was desirable to maintain continuity in either home, which were both satisfactory. Also, contrary to plaintiff's arguments on appeal, the record establishes that plaintiff subjected the child to more instability than defendant. As defendant testified, he only moved from California to

Illinois so that he could be part of the child's life after plaintiff and the child moved from California to Michigan without defendant's consent. Although plaintiff thought that changing the child's residence from Romeo would traumatize him, she admitted that she did not know the child's preference. Defendant believed the child would not have difficulty transitioning to living in Park Ridge on a more consistent basis because he was already integrated into home life there and had friends in the neighborhood. Accordingly, the trial court's finding that factor (d) favored the parties equally was not against the great weight of the evidence.[7]

### 4. FACTOR (e)

MCL 722.23(e) concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." "[T]he focus of factor e is the child's prospects for a stable family environment." *Ireland v Smith*, 451 Mich 457, 465; 547 NW2d 686 (1996). "[T]he acceptability of the custodial home or homes is not pertinent to this factor. It is legal error for the trial court to consider . . . acceptability, rather than permanence, of the custodial unit when making findings under Factor (e)." *Brown v Brown*, 332 Mich App 1, 21; 955 NW2d 515 (2020) (quotation marks and citations omitted).

In this case, the referee found that factor (e) did not favor either party because "there was no evidence introduced that either [party's] home lack[ed] permanence in the foreseeable future." As defendant noted, plaintiff did not object to this recommendation, and the trial court did not directly address factor (e) in its written opinion. Instead, the trial court merely stated as follows: "The Court finds that anything not objected to by the Plaintiff is hereby adopted as an order of the Court." This is admittedly troublesome because "[w]hen a trial court does not make . . . findings on the best-interest factors, the proper remedy is reversal and a remand for a new child-custody hearing." *Rivette*, 278 Mich App at 330. Nonetheless, we determine that remand is not warranted on this basis because the trial court made findings directly relevant to factor (e) in its opinion. See *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017) ("[T]his Court need not reverse or vacate a trial court's order unless doing so appears to this Court to be inconsistent with substantial justice. MCR 2.613(A). The trial court's error is harmless if it is not decisive to the case's outcome.").

---

[7] Plaintiff argues that in *Zuziak v Zuziak*, 169 Mich App 741, 748; 426 NW2d 761 (1988), this Court implied that when evaluating factor (d), it is appropriate to consider whether the home environment "is a positive nourishing environment." Even considering *Zuziak*, there is no evidence that defendant was unable, or unwilling, to provide a positive and nourishing environment to the child. Plaintiff argues that defendant "caused the minor child to lose confidence in his physical appearance by deeming he was obese," but the child was considered obese by medical professionals. After being informed of this in May 2022, defendant ensured that the child ate a balanced diet and had plenty of physical activity, which was recommended. Since June 2022, the child's body mass index had decreased. Under these circumstances, we fail to see how defendant's concern about the child's weight could support plaintiff's argument that the trial court's determination that factor (d) favored both parties was against the great weight of the evidence.

Many of the trial court's findings concerning factor (d) were relevant to factor (e). For example, the trial court found that the child had lived with plaintiff "all his life." The trial court also found that the child attended school in Michigan, where he played sports and had family and friends. The trial court also acknowledged that the child had friends and family in Illinois, where he spent time each month. Accordingly, the trial court found that the child had "a stable life in both the plaintiff and the defendant's home." These findings support the referee's conclusion that factor (e) did not favor either party, and this finding was not against the great weight of the evidence.

Although the child mainly resided with plaintiff since she moved out of the parties' shared apartment in October 2018, defendant consistently exercised overnight parenting times on a regular basis. We discern no distinct difference between the stability of the child's settings with plaintiff or defendant, and both settings are familiar to the child. See *Ireland*, 451 Mich at 464-465. Although plaintiff suggests that defendant's marriage is unstable because of how quickly defendant married his wife, no evidence supports this assertion. In fact, it appears that the marriage created a more stable environment because it permitted defendant to be a stay-at-home father a majority of the time. See *Mogle v Scriver*, 241 Mich App 192, 199-200; 614 NW2d 696 (2000) (holding that a trial court properly considered "a nuclear family with a stay-at-home mother presented a more stable environment"). Accordingly, the trial court's adoption of the referee's finding that factor (e) did not favor either party was not against the great weight of the evidence.

## 5. FACTOR (f)

MCL 722.23(f) considers "[t]he moral fitness of the parties involved." "[U]nder factor f, the issue is not who is the morally superior adult, but rather the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Berger*, 277 Mich App at 713 (quotation marks and citation omitted). In this case, the referee found that factor (f) slightly favored defendant, but the trial court concluded that factor (f) favored both parties because "neither party lacks moral fitness as it relates to their ability to parent [the child]." On appeal, plaintiff argues that factor (f) should have favored her. We disagree.

Plaintiff argues that defendant's testimony was not credible, that defendant perjured himself, and that defendant was evasive when plaintiff's counsel questioned him. "[W]e defer to the trial court on issues of credibility." *Moote v Moote*, 329 Mich App 474, 481; 942 NW2d 660 (2019). "The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth." *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 519, 679 NW2d 106 (2004) (quotation marks and citation omitted). Because the trial court "had the opportunity to perceive all of these factors," see *id.*, deference to the trial court's credibility determinations is well warranted on appeal. Even to the extent that defendant could be described as "evasive" during the evidentiary hearing, plaintiff was equally, if not more, evasive. Indeed, plaintiff's direct examination by defendant's counsel took place over nine hearings. Plaintiff often stated she could not "recall" certain dates and events. Plaintiff also acknowledged that her counsel made misstatements on the record, yet she failed to correct them.

Nor does the record support plaintiff's argument that defendant "made up fantastical stories." The statements to which plaintiff refers were made in the context of medical treatment; defendant told

a doctor that he was concerned that the child suffered physical abuse and medical neglect while in plaintiff's care. These statements were made after the doctor inspected wounds on the child's face and told defendant that the wounds were older than plaintiff stated and that falling off a swing— the story plaintiff reported—could not have caused the child's injuries. Therefore, after the doctor reported that his medical findings were inconsistent with plaintiff's version of events, defendant expressed concern in the child's presence. Although defendant was inappropriate in making this statement in front of the child, it is undisputed that plaintiff did not seek medical care for the child after he fell on his face while in her care, even though a medical assessment would have been proper to ensure that the child did not suffer a concussion. Testimony supports that the child's facial injuries were concerning. Under these circumstances, we fail to see how defendant's statements to the doctor could support a finding that factor (f) favored plaintiff. Moreover, considering plaintiff's delay in treating the child's cavities, and subsequent failure to accept responsibility for the delay, we fail to see how factor (f) should have favored her. Accordingly, the trial court's finding that factor (f) favored both parties was not against the great weight of the evidence.

### 6. FACTOR (g)

MCL 722.23(g) considers "[t]he mental and physical health of the parties involved." In this case, the referee, and the trial court both found that factor (g) weighed evenly between the parties. On appeal, plaintiff argues that factor (g) should have favored her. We disagree.

As plaintiff testified, she was concerned about defendant's anger management and mental health, which she believed would impact the child. But defendant was often described as pleasant and cooperative, and evidence established that both parties were inappropriate toward staff at an urgent care clinic, which supports weighing factor (g) equally. Plaintiff believed that defendant was under the influence of substances during the hearings, reasoning that: (1) in 2018, she found prescription bottles of Adderall and Valium in parties' apartment; and (2) defendant's speech was slurred at some of the hearings. But according to defendant, he exhibits a speech impediment during times of "[e]xtreme stress." This testimony was corroborated by one of defendant's family members and by defendant's long-time friend. It appears the trial court determined that defendant's explanation was credible because in its opinion, the trial court referenced the speech impediment and ultimately found that the parties had both "been sober for years." Again, "we defer to the trial court on issues of credibility." *Moote*, 329 Mich App at 481. Accordingly, the trial court's finding that factor (g) favored both parties was not against the great weight of the evidence.

### 7. FACTOR (i)

MCL 722.23(i) considers "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." Our Supreme Court has made it clear that *in camera* interviews with minor children in custody proceedings need not be recorded. *Molloy v Molloy*, 466 Mich 852, 852; 643 NW2d 574 (2002). "[T]he subject of the *in camera* interview is *strictly* limited to determining the child's preference." *Kuebler*, 346 Mich App at 685 (alteration in original; quotation marks and citation omitted). "As a general rule, a trial court must state on the record whether children were able to express a reasonable preference and whether their preferences were considered by the court, but need not violate their confidence by disclosing their

-13-

choices." *Fletcher v Fletcher*, 200 Mich App 505, 518; 504 NW2d 684 (1993), rev'd in part on other grounds by 447 Mich 871 (1994).

On appeal, plaintiff argues that the trial court failed to consider the child's preference. It is true that the trial court did not directly state that it considered the child's preference; however, at the beginning of the trial court's opinion, it clearly stated that it conducted an in-camera interview in February 2024 and cited MCL 722.23(i). Additionally, at a December 2024 hearing, almost two months after the trial court's opinion was released, the trial court denied plaintiff's motion to stay the proceedings pending appeal, stating that it stood "behind the decision" to grant defendant's motion to change the child's domicile and that it conducted an *in camera* interview with the child, which went to one of the best-interest factors. Accordingly, the record does not support plaintiff's argument the trial court overlooked the child's preference in relation to factor (i).

## 8. FACTOR (j)

MCL 722.23(j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. . . ." In this case, the referee found that factor (j) favored defendant, but the trial court concluded that factor (j) did not favor either party. On appeal, plaintiff argues that factor (j) should favor her. We disagree.

The record is replete with evidence that the parties refused to involve each other in matters concerning the child. Each party accused the other of not facilitating his, or her, communication with the child. This included when plaintiff failed to ensure that defendant was in contact with the child when the child was in Florida during a state of emergency because of Hurricane Ian. The parties struggled to schedule defendant's monthly parenting time, and other than recommending they drastically reduce defendant's parenting time, plaintiff did not offer recommendations for scheduling defendant's parenting time around the child's school schedule.

Also, as the trial court noted, the child referred to his stepfather as "dad," or "daddy," even though defendant repeatedly requested that plaintiff address this issue. Plaintiff initially agreed, but the child continued to call his stepfather "dad." In contrast, defendant ensured that the child did not call his wife "mom." Although plaintiff is correct that this does not appear to have impacted the child's bond with defendant, the evidence nonetheless demonstrated plaintiff's disregard for defendant's feelings on a sensitive topic involving his relationship with the child. On appeal, plaintiff outlines the ways in which defendant failed to foster a relationship between her and the child. But these arguments are not compelling because the trial court acknowledged defendant's longtime distrust of plaintiff, and it found that "both parties exclude the other." Considering the evidence as a whole, the trial court's findings concerning factor (j) were not against the great weight of the evidence. See *McIntosh*, 282 Mich App at 481 (concluding that the trial court properly considered "the evidence as a whole" when analyzing factor (j)).

## 9. BEST-INTERESTS DETERMINATION

After considering the best-interest factors, the trial court concluded that it was in the child's best interests to grant defendant's motion to change the child's domicile. On appeal, plaintiff

argues that the trial court erred as a matter of law because more best-interest factors favored her than defendant. This argument lacks merit.

As an initial matter, a majority of the best-interest factors did not favor either party; factors (h) and (k) favored plaintiff, and factor (c) favored defendant. Accordingly, the trial court clearly placed great weight on factor (c).

"MCL 722.23 requires the sum total of the [best-interest] factors to be considered, evaluated, and determined by the court[.]" *Pierron v Pierron*, 486 Mich 81, 91; 782 NW2d 480 (2010) (second alteration in original; quotation marks and citation omitted). "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). "[T]he trial court need not make its custody determination on the basis of a mathematical calculation and may assign differing weights to the various best-interest factors . . . ." *Berger*, 277 Mich App at 712. This Court has stated, "We disapprove [of] the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof." *McCain v McCain*, 229 Mich App 123, 130; 580 NW2d 485 (1998) (quotation marks and citation omitted). "Above all, custody disputes are to be resolved in the child's best interests." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001).

The trial court considered the facts and circumstances of this case. Per the trial court, it was in the child's best interests to live primarily with defendant so the child could continue to receive appropriate and regular medical and dental care. Although evidence supports that defendant sometimes failed to timely communicate with plaintiff about the child's medical appointments, it is undeniable that defendant obtained medical treatment for the child when plaintiff failed to do so. Despite finding that plaintiff failed to adequately care for the child's medical needs on occasion, the trial court held that "the parties continu[ing] to share joint legal custody [was] in the best interest of [the child] to ensure that all parties are granted the same access to information regarding [the child's] well-being." The trial court resolved the custody dispute in a manner that served the child's best interests.

Contrary to plaintiff's arguments on appeal, this is not a case where the trial court focused on one fact, to the exclusion of other relevant facts. Cf. *Snyder v Snyder*, 170 Mich App 801, 807; 429 NW2d 234 (1988); *Truitt v Truitt*, 172 Mich App 38, 46-47; 431 NW2d 454 (1988). Rather, when deciding the child's best interests, the trial court clearly considered all the facts of the case, including the parties' complicated relationship history. "This Court appreciates the importance of attempting to keep siblings together. . . . Ultimately, however, it is the best interests of each individual child that will control the custody decision." *Wiechmann*, 212 Mich App at 439-440. For the reasons already discussed, the trial court's ruling was in the child's best interests. The trial court complied with the CCA, and its decision to change the child's domicile to Park Ridge is not an abuse of discretion.

## D. THE REFEREE'S DENIAL OF PLAINTIFF'S MOTION FOR AN IN-PERSON HEARING ON THE ISSUE OF DOMICILE

Plaintiff next challenges the referee's denial of her request for an in-person hearing on defendant's motion for change of the child's domicile. We conclude that plaintiff is not entitled to relief.[8]

The record establishes that plaintiff requested in-person proceedings before the referee on multiple occasions during the evidentiary hearing on the child's domicile. The referee denied plaintiff's requests, in large part citing defendant's location in Illinois and the referee's inability to accommodate a hybrid proceeding. Even assuming this was error, the referee's decision to deny plaintiff's request for an in-person proceeding did not impact the outcome of this case. The referee stated on the record, "The one nice thing about Zoom, even though I know people think it's the opposite, is that I can actually see all the witnesses much easier this way." Also, there were no allegations on the record during the referee hearings concerning the motion to change the child's domicile that defendant used his cell phone.[9] Rather, defendant's counsel accused plaintiff of inappropriately interacting with her counsel at different points, and it was also noted that plaintiff's stepmother was communicating with a third party during her testimony, which led the referee to conclude that the stepmother's testimony was unreliable and incredible. The record does not support that defendant used his cell phone throughout his testimony, either before the referee or the trial court.

Additionally, the trial court did not blindly follow the referee's recommendation. The trial court (1) reviewed the transcripts and exhibits from the 30 hearings before the referee; (2) heard in-person testimony; (3) considered defendant's credibility, and the credibility of other witnesses; and (4) made a decision on the basis of the trial court's independent findings of fact and conclusions of law, which is evidenced by the trial court's disagreement with the referee's recommendations on several of the best-interest factors. Accordingly, plaintiff cannot establish prejudice, and she is not entitled to relief. See *Ellison*, 320 Mich App at 179 (an "error is harmless if it is not decisive to the case's outcome").

### III. ATTORNEY-FEE PROCEEDINGS

---

[8] We reject defendant's argument that this issue is unpreserved and, therefore, waived under *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Even if the issue was unpreserved, we would consider it under the plain-error standard of review. See *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7 (holding "judicial prudence favors applying the plain-error standard to an unpreserved claim in a child-custody proceeding").

[9] At a November 2023 hearing concerning attorney fees, plaintiff's counsel noted that defendant appeared to be using his cell phone. When questioned, defendant denied he was "texting." Rather, he stated that he received "a notification on [his] phone . . . ." Defendant was instructed to "look at the screen," not his phone, during his testimony. The direct examination then continued, and the issue was not raised again.

In Docket No. 373429, plaintiff raises a series of arguments concerning the trial court's decision on her request for attorney fees under MCR 3.206(D)(2). We consider them in turn and conclude that plaintiff is not entitled to relief.

## A. MOTION TO COMPEL DISCOVERY

Plaintiff first argues that the trial court abused its discretion by partially denying her motion to compel discovery relating to defendant's ability to pay her attorney fees. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

On appeal, plaintiff makes a variety of discovery arguments concerning different financial documents. Most of these arguments are preserved because they were raised in the trial court; however, plaintiff's argument as to defendant's 2023 tax returns is not preserved because it was not raised in, or addressed by, the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

"[Q]uestions of law are reviewed de novo." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005) (citation omitted). "This Court reviews for an abuse of discretion a trial court's decision on a motion to compel discovery." *In re Seybert Estate*, 340 Mich App 207, 210; 985 NW2d 874 (2022). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes. But a court necessarily abuses its discretion when it makes an error of law." *In re CY Guardianship*, ___ Mich App ___, ___; ___NW3d ___ (2025) (Docket No. 370828); slip op at 3 (quotation marks and citation omitted). "[J]udicial prudence favors applying the plain-error standard to an unpreserved claim in a child-custody proceeding." *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7. To show that plain error occurred warranting reversal, the following four elements must be established:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. (quotation marks and citation omitted).]

## 2. ANALYSIS

"Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice." *Woodington v Shokoohi*, 288 Mich App 352, 361; 792 NW2d 63 (2010) (quotation marks and citations omitted). As such, Michigan's "[d]iscovery rules are to be liberally construed in order to further the ends of justice." *Id*. (quotation marks and citation omitted). "The general rule is that any document which is relevant and not privileged is freely discoverable upon request." *Id*. (quotation marks and citation omitted); see MCR 2.302(B)(1). Relevant evidence is

evidence that tends to make the existence of a fact of consequence more or less likely to be true. MRE 401.

"Because the purpose of discovery is to simplify and clarify issues, the court rules should be construed in an effort to facilitate trial preparation and to further the ends of justice." *Spine Specialists of Mich, PC v State Farm Mut Auto Ins Co*, 317 Mich App 497, 501; 894 NW2d 749 (2016) (quotation marks and citation omitted). "Our Supreme Court has emphasized that the rules should promote the discovery of the true facts and circumstances of a controversy, rather than aid in their concealment." *Id*. (quotation marks and citation omitted). "The modern tendency is to broaden the scope of discovery when necessary to facilitate preparation, to guard against surprise, and to expedite justice. *Woodington*, 288 Mich App at 361 (quotation marks and citation omitted). "Nevertheless, [our] court rules also provide significant protections from excessive or improper discovery practices[.]" *Mol v Mol*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 370949; 371184); slip op at 8. "The rules further authorize trial courts to provide significant protections against unreasonable discovery requests." *Id*. (quotation marks and citations omitted).

It is relevant to first state that the trial court narrowed the scope of the de novo hearing on attorney fees, which was appropriate. A trial court is required to "hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court." MCL 552.507(4); see MCR 3.215(E)(4). A trial court is not necessarily required to hold a full evidentiary hearing, however. See *Dumm v Brodbeck*, 276 Mich App 460, 463-466; 740 NW2d 751 (2007). A hearing is considered de novo even if the trial court's decision is "based in part on the record of a referee hearing supplemented by evidence that was not introduced at a previous hearing." MCL 552.507(6)(c). A trial court can impose "reasonable restrictions and conditions to conserve the resources of the parties . . . ." MCL 552.507(5); see MCR 3.215(F)(2)(d). For example, the trial court is permitted to "prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing[.]" MCR 3.215(F)(2)(c); see also MCL 552.507(5)(b).

In this case, plaintiff acknowledges that the trial court was permitted, under the law, to limit the scope of the hearing if the evidence she sought to admit was "available at the referee hearing[.]" See MCR 3.215(F)(2)(c). But plaintiff argues that the following evidence was unavailable at the November 2023 referee hearings because defendant did not provide the evidence despite being asked to do so: (1) defendant's bank statements from May 2023 through November 2023; and (2) defendant's credit card statements from May 2023 through November 2023.

In May 2023, plaintiff submitted interrogatories to defendant, requesting "information regarding attorney fees Defendant has incurred, Defendant's employment and income, his assets, his debts, his bank statements, his credit card statements, his 2022 tax return and his transcript orders and expenses." In July 2023, defendant responded, but because plaintiff believed that his responses were deficient, she requested that they be supplemented. In August 2023, defendant provided supplemental responses to plaintiff's interrogatories. As plaintiff stated, the credit card statements, bank statements, and summary of paid attorney fees paid "had a cut-off date of May [to] July 2023." The referee hearing on attorney fees was held in November 2023. Thereafter, in preparation for the trial court's de novo review of the referee's opinion and recommended order, plaintiff submitted a third set of interrogatories to defendant, requesting "updated statements, as well as information that Defendant had previously failed to submit." Defendant objected, and

plaintiff moved to compel discovery. The trial court ordered defendant to produce: (1) "[u]pdated bank statements from new and existing accounts" from November 2023 through March 2024; and (2) "[c]redit card statements from new and existing credit cards" from November 2023 through March 2024. Accordingly, it appears that plaintiff never received defendant's credit card and bank statements from May/July 2023 to October 2023 but did receive the November 2023 to March 2024 statements.

Even if the trial court abused its discretion by not requiring defendant to produce his credit card and bank statements from May/July 2023 to October 2023, the error was harmless. Plaintiff had extensive evidence relating to defendant's bank accounts and credit cards. The evidence was presented before the referee, and it was reviewed by the trial court. The trial court determined that the evidence did not support plaintiff's assertion that defendant could pay plaintiff's attorney fees simply because defendant's funds came from his wife's income. The trial court's finding was not clearly erroneous. Defendant was unemployed for a majority of the proceedings. The most defendant earned was about $6,000 in 2021, when he worked as a substitute teacher. His attempts to revive his modeling career were unsuccessful, and he did not earn income in 2022 or 2023. Defendant's wife paid all the household expenses and defendant's bills, including their joint credit cards. We fail to see how plaintiff obtaining discovery relating to defendant's credit cards and bank accounts for three months in 2023 would have changed the trial court's finding that defendant was unable to pay plaintiff's attorney fees. See *Ellison*, 320 Mich App at 179 (stating that "[t]he trial court's error is harmless if it is not decisive to the case's outcome").

Plaintiff further argues that the trial court improperly denied her request for "[d]efendant's 2022 income information, including tax records, paystubs, W-2 forms, 1099 forms, K-1 forms, etc." To the extent that defendant's 2022 tax return was unavailable at the time of the November 2023 referee hearings, the trial court's error in failing to order defendant to provide it in discovery was harmless. As defendant testified, he produced his 2022 W-2 during discovery, which showed zero income. He also denied that he would "have any income to report on [a] 2022 tax return." For the reasons discussed later in this opinion, this finding was not erroneous. Under these circumstances, plaintiff is not entitled to relief. See *id*.

Plaintiff also argues that the trial court abused its discretion by failing to order defendant to provide his 2023 tax return. As already stated, this argument is not preserved. Defendant also denied that he earned any income in 2023 and he produced all but 3 months of bank and credit card statements for 2023. For the reasons already explained, the trial court did not plainly err by failing to sua sponte order defendant to provide his 2023 tax return, and plaintiff's substantial rights were not affected. See *Quint*, ___ Mich App at ___; slip op at 7.

Plaintiff further argues that the trial court improperly denied her requests for: (1) a retainer fee agreement between defendant and his third trial counsel, who filed an appearance in November 2023; and (2) invoices related to defendant's payment of his third trial counsel's fees. Even if plaintiff is correct that evidence concerning defendant's counsel's fees was "not available at the referee hearing," plaintiff would not be entitled to relief on appeal. The trial court ordered the parties to provide "[t]he amount of attorney fees paid . . . through March 2024[.]" Moreover, at the hearing before the trial court, defendant testified about the amount of attorney fees he incurred. Although the retainer fee agreement was likely not privileged, see *US Fire Ins Co v Citizens Ins Co of America*, 156 Mich App 588, 592-593; 402 NW2d 11 (1986), Michigan court rules

"authorize trial courts to provide significant protections against unreasonable discovery requests," *Mol*, ___ Mich App at ___; slip op at 8 (quotation marks and citation omitted). We conclude that under the circumstances, plaintiff's requests were unreasonable.

Further, although plaintiff complains that defendant was not required to produce invoices from Modern Court Reporting, she acknowledges that defendant's wife paid for the transcripts defendant ordered. The trial court reviewed the transcripts, and it knew that defendant obtained transcripts throughout the proceedings on an expedited basis. The trial court's statements on the record made it clear that the court understood the expedited transcripts cost defendant money, and the trial court would take it into consideration. Even so, the trial court implied that such information may not be relevant because the evidence established that defendant's wife—not defendant—paid for the transcripts. The trial court was permitted to "impose . . . reasonable restrictions and conditions to conserve the resources of the parties and the court" when conducting the de novo hearing, MCR 3.215(F)(2)(d), which was undoubtedly proper in this case. The trial court did not abuse its discretion by denying the discovery requests concerning exactly how much defendant's spouse paid for expedited transcripts. It matters not that the trial court denied the request for different reasons.[10] See *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005) ("[T]his Court will not reverse a trial court's decision if the correct result is reached for the wrong reason.").

Accordingly, we affirm the trial court's March 29, 2024 order, which partially denied plaintiff's motion to compel discovery.

## B. MOTION TO QUASH PLAINTIFF'S SUBPOENA

Plaintiff further argues that the trial court abused its discretion by granting defendant's motion to quash plaintiff's subpoena to Modern Court Reporting. According to plaintiff, quashing the subpoena resulted in her being unable to present evidence concerning the amount defendant paid for expedited transcripts during the proceedings, which was relevant to his ability to pay plaintiff's attorney fees. "This Court [generally] reviews a trial court's decision on a motion to quash a subpoena for an abuse of discretion." *Mol*, ___ Mich App at ___; slip op at 7. But, considering that plaintiff's counsel knowingly and intentionally acquiesced to the trial court taking judicial notice of information concerning the production of the transcripts, in lieu of permitting plaintiff to subpoena information from Modern Court Reporting, this argument is waived. See *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014) (quotation

---

[10] When denying this request, the trial court stated that "Plaintiff has not demonstrated that this evidence was not available at the referee hearing."

-20-

marks and citation omitted).  Reviewing a waived issue would permit plaintiff to harbor error as an appellate parachute.  See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).[11]

### C. DENIAL OF PLAINTIFF'S REQUEST FOR ATTORNEY FEES

Plaintiff further argues that she was entitled to attorney fees under both MCR 3.206(D)(2)(a) and (b), and that the trial court abused its discretion by concluding otherwise.  We disagree.

### 1. STANDARD OF REVIEW

"[Q]uestions of law are reviewed de novo." *Reed*, 265 Mich App at 164 (citation omitted).  We review a trial court's decision to award attorney fees for an abuse of discretion. *Richards*, 310 Mich App at 699.  "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id*.  But "findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error.  A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 700 (quotation marks and citations omitted).

### 2. ANALYSIS

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract.  In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(C)." *Reed*, 265 Mich App at 164 (citations omitted).  MCR 3.206(C) was subsequently amended to become MCR 3.206(D).  MCR 3.206(D) "provides two independent bases for awarding attorney fees and expenses" in a domestic relations action. *Richards*, 310 Mich App at 700; see MCR 3.206(D)(2)(a) and (b).  In this context, attorney fees are not recoverable as of right, *Reed*, 265 Mich App at 164, and the party requesting attorney fees bears the burden of proof, *Safdar*, 327 Mich App at 271.

#### a. MCR 3.206(D)(2)(a)

MCR 3.206(D)(2)(a) has been interpreted to require an award of attorney fees "only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (quotation marks and citation omitted).  If a party requests attorney fees and expenses under MCR 3.206(D)(2)(a), he or she "must allege facts sufficient to show that he or she is unable to bear the expense of the action, and that the other party is able to pay." *Colen v Colen*, 331 Mich App 295, 306; 952 NW2d 558 (2020) (quotation marks and citation omitted).  "Accordingly, . . . the analytical focus is on the financial status of each party in relation to the attorney fees. . . ." *Id*. at 307.  "This requires a trial court to give special consideration to the specific financial situations of the parties and the equities involved." *Id*. at 308 (quotation marks and citation omitted).  "[A] party sufficiently demonstrates an inability to pay attorney fees when

---

[11] In any event, the trial court did not abuse its discretion for the reasons already discussed in relation to plaintiff's motion to compel defendant to produce "[i]nvoices received from court reporters and receipts evidencing proof of payment for each invoice . . . ."

that party's yearly income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702.

Plaintiff argues that the trial court "improperly analyzed [defendant's] ability to pay." After acknowledging that both she and defendant are essentially stay-at-home parents, plaintiff emphasizes the disparity in the income generated by their *respective spouses*. Plaintiff also emphasizes the fact that defendant charged significant sums on his credit cards, and the balances were paid off on a monthly basis for a majority of the proceedings. Additionally, plaintiff argues that defendant's bank accounts were not depleted. In sum, the essence of plaintiff's arguments is that she has fewer financial resources than defendant. "[B]ut the standard for awarding attorney fees under MCR 3.206(D)(2)(a) is more complex than that." See *Colen*, 331 Mich App at 309.

As earlier stated, a trial court is required "to give special consideration to the specific financial situations of the parties and the equities involved." *Loutts v Loutts*, 309 Mich App 203, 218; 871 NW2d 298 (2015) (quotation marks and citation omitted). In this case, the trial court did so, concluding that plaintiff failed to establish defendant's wife was legally obligated to pay defendant's financial obligations in relation to the custody proceeding.

The trial court considered defendant's ability to earn as a substitute teacher. In 2021, defendant earned about $6,000 as a substitute teacher. He did not work as a substitute teacher after June 2021, in 2022, or in 2023. Defendant, who had commitments in the home and was involved in the highly contentious custody litigation, had difficulty committing to substitute teaching jobs. Defendant also denied that he would be able to assist plaintiff with her attorney fees if he worked as a substitute teacher because the work is "intermittent," and the pay is "nominal." After considering plaintiff's argument that the trial court should impute income to defendant, the court found that defendant's unexercised ability to earn as a substitute teacher was equivalent to plaintiff's past earnings when she worked as a server in California, or as a daycare provider in Michigan.

Although plaintiff appears to argue that defendant could have earned more, the record supports that defendant did not have traditional employment for a majority of his adult life. Beginning in 1993, defendant worked as a model, and it appears he was successful for a number of years. But when the child was born in 2017, defendant struggled to obtain work in the entertainment industry. Defendant lived off his savings for several years, which was depleted by everyday expenses and the custody litigation with plaintiff.

In May 2014, defendant assisted with a family business, which was sold in August 2014. Defendant had friends and family who attempted to help him locate gainful employment in Illinois. Their efforts were unsuccessful, as were defendant's efforts in 2021, to revive his modeling career. According to defendant, modeling jobs are "geographically centralized in Los Angeles" and New York City. Defendant moved to Illinois in 2020 to gain equal parenting time with the child, and he had no intention of moving. Defendant incurred business expenses exceeding $20,000 in 2021, which were reflected in defendant's and his wife's joint 2021 tax returns. As defendant testified, his wife paid the business expenses. Although defendant founded a streaming company in 2009, and worked as its director of operations until 2014, defendant had "nothing to do with" the company after 2014. Defendant confirmed he had the skillset to be a director of operations at that

time, but defendant denied that he retained that skillset because the industry had changed and is now "saturated" with streaming companies.

Although defendant has a bachelor's degree in political science, it does not appear that defendant ever used the degree to obtain employment. As defendant stated, a bachelor's degree does not guarantee employment because there are many other factors involved. The record supports the trial court's finding that defendant's ability to earn hinged on him obtaining substitute teaching jobs, which was inconsistent work that only paid a nominal amount. Contrary to plaintiff's arguments on appeal, this is not a case where defendant had the type of education or job history that would permit him to be gainfully employed but defendant nonetheless refused to obtain employment. Cf. *Safdar*, 327 Mich App at 271.

Plaintiff challenges the trial court's holding that ordering defendant to pay plaintiff's attorney fees would require his wife, a nonparty to the action, to pay plaintiff's attorney fees. But the record supports this finding. Defendant repeatedly testified that he spent all his savings, was unemployed, was in credit card debt, and was financially supported by his wife. Importantly, MCR 3.206(D) does not contemplate a third-party's ability to pay attorney fees on the nonmoving party's behalf. Rather, MCR 3.206(D)(2)(a) states: "A party who requests attorney fees and expenses must allege facts sufficient to show that . . . *the party* is unable to bear the expense of the action . . ., and that *the other party* is able to pay. . . ." (Emphasis added.) Defendant's wife was not a party—i.e., a plaintiff or defendant—to the custody litigation in this case.

Plaintiff next argues that the portion of defendant's wife's income deposited into defendant's bank accounts became joint marital property under the law. But the authority plaintiff cited applies in the context of property division in a divorce proceeding, and is therefore not relevant here. Also, defendant denied that he and his wife "commingled" funds, noting he had "no money to commingle." Defendant testified that $1,000 of his wife's income was deposited into a certain bank account once each month. From this money, defendant paid his monthly child support obligation. Also, after defendant and his wife married, a Chase bank account had substantial amounts of money deposited into it each month although defendant agreed that he had "reasonable access" to the money in this account, he denied that he could "just go spend whatever," or that he had "unfettered access" to his wife's income. As defendant explained, while he and his wife did not have a prenuptial agreement, there was "a marital understanding." Defendant testified that his wife pays all the household expenses, defendant's bills, and her own financial obligations. Defendant stated that although his wife's income "looks high," it was "significantly lower by the time all [her] obligations [were] met." Here again, plaintiff argues that defendant, through his wife, paid a significant amount of attorney fees and costs relating to obtaining expedited transcripts during the proceedings. As the trial court stated, however, the fact that defendant relies on his wife's income to pay child support, his legal fees, and all his expenses, supports defendant's inability to pay plaintiff's attorney fees.

As the trial court acknowledged, the income of a party's spouse could be relevant to a party's ability to pay attorney fees to the extent that it affects the party's financial status, i.e., alleviates the party's financial obligations. See e.g., *Kersten v Kersten*, 141 Mich App 182, 184-185; 366 NW2d 92 (1985); *Beverly v Beverly*, 112 Mich App 657, 662-663; 317 NW2d 213 (1981). But here defendant's wife's income alone does not support the conclusion that plaintiff is entitled to relief. Because defendant lacked an income, his wife's income was not a relevant consideration

as to defendant's ability to pay. As the trial court stated, "If a party has no income, the fact that the party is not financially responsible for any household expenses does not change the fact that the party has no income." Therefore, the trial court did not abuse its discretion by concluding that plaintiff was not entitled to attorney fees under MCR 3.206(D)(2)(a).

### b. MCR 3.206(D)(2)(b)

"MCR 3.206(D)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Richards*, 310 Mich App at 701; see *Cassidy v Cassidy*, 318 Mich App 463, 481; 899 NW2d 65 (2017) ("MCR 3.206(C)(2)(b) is focused on a party's bad behavior"). MCR 3.206(D)(2)(b) states that a party seeking attorney fees has to establish "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules." For plaintiff to receive attorney fees under MCR 3.206(D)(2)(b), "the attorney fees . . . must have been incurred because of [defendant's] misconduct." See *Reed*, 265 Mich App at 165. A causal requirement exists: the party's failure to obey the trial court's orders must have caused the other party to incur fees and expenses. MCR 3.206(D)(2)(b); see *Richards*, 310 Mich App at 701-702. This is because MCR 3.206(D) was enacted to reduce the incidents of parties' vindictive and wrongful behavior in domestic relations cases, and to shift the costs associated with such behavior to the party engaging in the wrongful behavior. See *Richards*, 310 Mich App at 701.

On appeal, plaintiff argues that the trial court abused its discretion by denying her request for attorney fees under MCR 3.206(D)(2)(b) because defendant repeatedly violated the November 2019 consent judgment and a September 2023 order by failing to timely involve plaintiff in the child's medical appointments. As a result, plaintiff argues that she was "forced" to file two motions to show cause, which resulted in plaintiff incurring additional attorney fees. The relevant question is whether defendant engaged in behavior which would justify an award under MCR 3.206(D)(2)(b). We conclude that although defendant's behavior was imperfect, it did not justify an award under MCR 3.206(D)(2)(b). Defendant's decisions to have the child medically assessed, or medically treated, without providing advance notice to plaintiff do not appear to be "vindictive," or "wrongful." The evidence supports that, at times, defendant lacked the ability to provide 48 hours' advance notice to plaintiff because he could not make appointments at walk-in clinics. Defendant also expressed confusion as to whether taking the child to the urgent care, or a walk-in clinic, constituted an "appointment" under the 2019 consent judgment. Undoubtedly, defendant could have done more to inform plaintiff beforehand once he decided to have the child medically assessed. But defendant's reluctance to involve plaintiff stemmed from the parties' acrimonious relationship and their differing beliefs about western medicine. Except for a February 2023 antibodies test and a July 2021 assessment of the child's ankle, the referee found that defendant intended to inform plaintiff when the child was medical assessed or medically treated.

Defendant's decisions did not require plaintiff to incur additional attorney fees, Rather, plaintiff elected to file the motions to show cause because defendant delayed providing her information about the child's medical appointments. It appears the referee and the trial court concluded that defendant did not fail to inform plaintiff of the child's medical appointments because defendant lacked respect for court orders. Rather, defendant's failure to keep plaintiff informed largely stemmed from the parties' lack of trust and difficulty communicating. At times, plaintiff also failed to keep defendant informed of the child's medical treatment—specifically

regarding the child's dental needs. Additionally, defendant's failure to pay child support for several months appears to be the result of confusion surrounding the referee's recommendation that defendant's child support obligation be calculated at $0. It appears defendant paid any accrued back child support after being ordered to do so. Although we do not condone defendant's behavior and do not encourage it in the future, defendant did not engage in behavior which would justify an award under MCR 3.206(D)(2)(b).

Plaintiff also argues that she incurred attorney fees because of defendant's "frivolous presentation of his case in chief" in the referee hearings concerning the motion for change of the child's domicile. But "the fact that litigation has been lengthy is not by itself reason to conclude misconduct has occurred." *Reed*, 265 Mich App at 165. It is important to reiterate that defendant bore the burden of proof in this case, under a clear-and-convincing evidence standard, and was therefore required to present a thorough and well supported case-in-chief. See *Rains*, 301 Mich App at 325, 328-329. Additionally, plaintiff's direct examination by defendant's counsel took place over *nine* hearings. Plaintiff often stated that she could not "recall" certain dates and events, which resulted in additional questioning from defendant's counsel. Defendant's witnesses offered testimony that was relevant to the change of domicile motion. Additionally, the referee had the ability to control the proceedings, which included limiting the questioning of witnesses. See MCR 3.215(D)(1) ("The Michigan Rules of Evidence apply to referee hearings."); MRE 611(a)(2) ("The court must exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time"). Even so, the referee did not place time restrictions on the parties until ordered to do so by the trial court. Even then, the referee admitted that he did not always enforce the time restrictions.

The trial court commented that the proceedings before the referee went on far too long, but it cannot be said that defendant was the sole cause of the referee-hearings extending over 30 dates. The trial court did not blame defendant for the delay in the proceedings. Rather, the court found that "neither party has provided any evidence that the other party was the sole cause of the length and number of proceedings in this case." Review of the record establishes this finding was not clearly erroneous.

Notably, over the course of these proceedings, the trial court ordered defendant to pay plaintiff's attorney fees two times: (1) in July 2022, defendant was ordered to pay $3,000 for filing motions before participating in mediation, which violated the parties' consent judgment; and (2) in September 2024, defendant was ordered to pay $700 for filing a proposed order that did not accurately reflect the trial court's ruling.

Therefore, the trial court did not abuse its discretion by concluding that plaintiff was not entitled to attorney fees under MCR 3.206(D)(2)(b).

In sum, plaintiff failed to establish that the trial court abused its discretion by denying her request for attorney fees under MCR 3.206(D)(1)(a) and (b). To secure relief, plaintiff needed to do more than simply show an award of fees in her favor would have been a reasonable and principled outcome; she must show the trial court's decision to deny her request was outside the range of such outcomes. See, e.g., *Webster v Osguthorpe*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166627;166628); slip op at 19 ("Merely because a denial of sanctions may have been

supportable does not mean that the trial court abused its discretion by allowing sanctions"). For the reasons discussed above, plaintiff has not done so.

We acknowledge "it is improper to award attorney fees on general equitable principles." *In re Adams Estate*, 257 Mich App 230, 237; 667 NW2d 904 (2003); see *Reed*, 265 Mich App at 166 ("The trial court may not award attorney fees . . . solely on the basis of what it perceives to be fair or on equitable principles"). Additionally, the trial court's decision does not lead to an "inequitable result." This custody dispute caused both parties to incur fees. Requiring defendant to pay plaintiff's attorney fees would essentially amount to a punishment for him exercising his right to fully litigate the issues raised and obtain a final resolution.

Additionally, although plaintiff repeatedly argues that defendant's testimony was not credible, we defer to a trial court's determinations regarding credibility. *Moote*, 329 Mich App at 478. As we observed earlier, "[t]he credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth." *Shuler*, 260 Mich App at 519 (quotation marks and citations omitted). Because the trial court "had the opportunity to perceive all of these factors," see *id*., deference to the trial court's credibility determinations is well warranted on appeal. The trial court's findings were not clearly erroneous, and the trial court did not abuse its discretion by denying plaintiff's request for attorney fees under MCR 3.206(D). We therefore affirm the trial court's denial of attorney fees.

Indeed, because plaintiff failed to establish on the existing record that she is entitled to appellate attorney fees under MCR 3.206(D), and her request for attorney fees is procedurally improper, we reject her request for attorney fees under that court rule. Cf. *Gates v Gates*, 256 Mich App 420, 437-439; 664 NW2d 231 (2003); see also MCR 7.211(C)(8).

## IV. CONCLUSION

We affirm the trial court's decision to grant defendant's motion to change the child's domicile to Park Ridge. We also affirm the trial court's decisions concerning discovery and the trial court's decision to deny plaintiff's motion for attorney fees. Plaintiff's request for appellate attorney fees under MCR 3.206(D) is denied.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi

-26-